HUGH CUNNINGHAM v. THE STATE.

No. 13642. Delivered November 5, 1930.
Rehearing Granted June 17, 1931.

236

The opinion states the case.

*Crumpton & Crumpton,* of Texarkana, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for selling intoxicating liquor; punishment, one year in the penitentiary.

The indictment in this case charges in a single count that appellant did unlawfully sell to Ennis Brooks and Harvey Tutt certain intoxicating liquor. There is but one bill of exception, which brings forward appellant's exception to the charge of the court in submitting to the jury appellant's guilt predicated upon a sale of intoxicating liquor to the two persons named in the indictment, it being insisted that such charge finds no support in testimony, and that the court should have instructed the jury to return a verdict of not guilty.

Appellant did not testify. The state introduced Tutt and Brooks, the two alleged purchasers. Tutt testified that appellant came to where he and Brooks were at work, stopped his car and called witness out to where he was. He said appellant picked up a pint and held it out and asked "us if we wanted it". Witness said he asked Brooks, and Brooks said, "Hell, yes, we'll take two of them." Witness said he handed the liquor to Brooks, and that later they drank it and that it was intoxicating liquor. Brooks testified that he paid for the intoxicating liquor. We quote from his testimony: "Yes, I paid for it. I paid $1.50 for it. We got one pint. It was intoxicating liquor. Harvey delivered the liquor to me, and Harvey and I drank it. Both of us drank it." Harvey was the witness Tutt. We think this testimony sufficient for the jury to conclude that there was a sale of the liquor to the purchasers named in the indictment. We do not think this conclusion negatived by the fact that one of said parties put up all the money to pay for the liquor. The negotiations were carried on by one of the parties, to the alleged transaction, and the fruits of the sale were divided between him and the other party, though the other party paid the price. We do not think

the conclusion reached by us in anyway in conflict with that announced in Brown v. State, 376 S. W., 906.

The judgment will be affirmed.

*Affirmed.*

Hawkins, Judge, absent.

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant insists that we reached a wrong conclusion in holding that the evidence showed a joint sale of liquor to Brooks and Tutt as was alleged in the indictment.

Brooks and Tutt were working in a sand pit about twenty-five or thirty feet from the road. Tutt testified as to what occurred as follows:

"Mr. Cunningham came up in a Ford roadster and stopped and called me out there,—when he stopped he picked up a pint and held it out and asked us if we wanted it. I asked Ennis (Brooks) and he said 'Hell, yes, we'll take two of them,'—I went back and started to loading sand—I handed it to Ennis and I guess he paid for it, he was getting his change out. I gave the liquor to Ennis. You ask what finally became of it—we drank it. * * * No, I did not buy any, and I did not see Brooks buy any from Hugh Cunningham (appellant). If Brooks bought any I did not see him. I did not buy it. Cunningham handed it to me."

Brooks' version of the transaction is as follows:

"A Ford roadster came up and the fellow in it called Harvey (Tutt),—I kept on loading, then Harvey called me and held up a pint of whisky and he said, 'You want it?' and I said, 'I guess so,'—I knew Harvey didn't have any money to pay for it and I went to pay for it. Yes, I paid for it. I paid $1.50 for it. We got one pint. Harvey delivered the liquor to me and both of us drank it."

It is not quite clear whether Tutt carried the liquor back to the sand pit and delivered it to Brooks, who then went to the car and paid for it, or whether Brooks came to the car and Tutt handed it to him there. It is clear, however, that Brooks knew Tutt had no money and that he had gone back to work and was not at the car when Brooks paid for the whisky. It is not shown that the price was understood or agred on, or that anything had been said about it until Brooks went to the car. It is not shown that Brooks and Tutt had agred to buy whisky or knew that appellant was coming there or what he came for until he made his purpose known. It is not shown that Tutt then or at any other time contributed or agreed to contribute anything to the purchase price. The fact that he drank some of the liquor did not make him a purchaser. If after paying for the liquor Brooks had gotten in the car with appellant and driven away and before returning to

the sand pit he had consumed all of the liquor and Tutt had gotten none of it, it would be a far cry to hold that he was a co-purchaser with Brooks and yet the sale was complete when the liquor was paid for. Although Tutt testified that appellant *"asked us"* if we wanted the liquor, it no where appears that he assented to wanting it but referred the matter to Brooks, and while Brooks said *"We'll* take *two* of them," he only took one and paid for it himself.

The writer is unable to distinguish this case from Arnold v. State, 47 Texas Crim. Rep., 556, 85 S. W., 18. There the sale was alleged to have been made to one Shufford. Norton and Shufford went into Arnold's place of business and called for cider. Arnold set out whisky for both of them. Morton paid for it. Shufford paid no part of the purchase price. We quote from the opinion as follows:

"The substance of this statement, as well as the other facts in the record, show that the whisky was sold to Morton, and not to Shufford. The mere fact that Shufford drank some of the whisky would not make it a sale to Shufford, but the sale would be to Morton, as he paid for it."

See also O'Shennessy v. State, 49 Texas Crim. Rep., 600, 96 S. W., 790; Sessions v. State, 98 S. W., 243; Ellington v. State, 86 S. W., 330; Price v. State, 83 Texas Crim. Rep., 322, 202 S. W., 948; Bruce v. State, 39 Texas Crim. Rep., 26; Tippett v. State, 53 Texas Crim. Rep., 180, 109 S. W., 190.

The original opinion in this case and the opinion in Arnold's case can not both be correct. The sale in this case appears to have been made to Brooks, and a fatal variance arises on the proof and the averments in the indictment. Having reached this conclusion from a further consideration of the case, the motion for rehearing should be granted, the judgment of affirmance set aside, and the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*